FILED

2010 Dec-01  PM 04:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

TAMMY ROBINSON,

    Plaintiff,

  vs.                           CIVIL ACTION NO.: CV 10-J-1329-J

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## MEMORANDUM OPINION

This matter is before the court on the record and briefs of the parties.  This court has jurisdiction pursuant to 42 U. S. C. § 405.  The plaintiff seeks reversal or remand of a final decision of the Commissioner. All administrative remedies have been exhausted.

## PROCEDURAL BACKGROUND

The plaintiff protectively filed an application for Supplemental Security Income ("SSI") benefits on February 22, 2007, alleging she had been unable to work since January 1, 2005[1] (R. 49).  This application was denied (R. 50) and on February 11, 2009, the plaintiff had a hearing before an administrative law judge

---

[1] This appeal concerns the time period solely from February 22, 2007, until March 13, 2009, as the plaintiff was found disabled beginning March 13, 2009, based on a subsequent application  (R. 2; see also plaintiff's brief, at 2).

(ALJ) (R. 32).  The ALJ denied the plaintiff's claim on March 17, 2009 (R. 10-20) and the Appeals Counsel denied review on March 26, 2010 (R. 1-3).  The ALJ's decision thus became the final order of the Commissioner.  *See* 42 U.S.C. § 405(g).

The plaintiff argues that the ALJ erred in failing to develop the record as to plaintiff's intellectual functioning under Listing 12.05 and in failing to resolve an inconsistency and insufficiency in the record.

## FACTUAL BACKGROUND

The plaintiff completed the tenth grade, informing one examiner that she was in special education[2] (R. 33, 240).  The plaintiff stated on her application for benefits that she has "glaucoma in eyes, ulcer, nerve problems, spitting up blood and lot (sic) and I'm dizzy and I aint able to work" (R. 107).  She expounded on her problems, adding that "[w]hen I stand up a long time my feet swells(sic), I just cant work, I wish I could.  I have trouble walking for a long time or I get out of breath.  I cant even watch tv due to the eye conditions, I cant eat certain foods" (R. 107).

At her hearing, the plaintiff testified she had severe headaches the past three

---

[2] The Winston County Board of Education reported that it found no special education records for Tammy Borden Robinson (R. 121).  However, the records submitted for seventh and eighth grade bear the notations "Spec. Ed." on them (R. 124).

or four months, but amended that to "years" upon questioning by her representative (R. 35).  She stated she had headaches nearly every day that cause her to pass out, and that recently her headaches "got worser (sic)" (R. 35).  She has tried four times to get her driver's license, but has not passed the oral test (R. 37).  She also wears a digital watch because she cannot tell time with watches that have hands (R. 37).  The plaintiff suffers from ocular hypertension, which causes her eyes to hurt and burn (R. 37-38).  Upon questioning, the plaintiff testified that headaches are what keep her from working (R. 40).

The plaintiff's prior work history does not amount to substantial gainful employment (R. 108, 112).  In the plaintiff's own opinion, she is able to stand for 15 minutes at a time, walk for 30 minutes at a time, and sit for an hour at a time (R. 100).  She noted that when she does household chores, she "get tried quick (sic)" and that since her onset date she has "get worst (sic)" (R. 102).

The plaintiff's medical records reflect that the plaintiff has no visual limitations and no visual disability (R. 134).  However, these records do reflect that the plaintiff complained of eye pain and that she has been diagnosed with ocular hypertension, for which she takes medications (R. 134, 136-150).

The plaintiff's regular treating physician is Mark Keating, M.D.  His records reflect that the plaintiff has complained of headaches at least since 2003 (R. 156).

She also complained of intermittent tingling in her left hand (R. 156).  Dr. Keating diagnosed the plaintiff as suffering from chest wall pain, carpal tunnel syndrome, a history of hyperlipidemia, a borderline EKG, weakness and fatigue, and intermittent headaches (R. 157, 210).  Her medical records reflect ongoing complaints of headaches (R. 159, 160, 165, 166) and ongoing problems with pain in her abdomen (R. 160-163, 166).  These records further reflect that the plaintiff had underlying depression (R. 166), as well as a history of GERD (R. 166, 167). A CT of her head in 2004 was normal (R. 227).

In October 2004 the plaintiff was noted to have generalized weakness, but her mood was improved, as well as her headaches (R. 168).  However, in March 2005 the plaintiff was again complaining of headaches, as well as fatigue, dizziness and back pain (R. 173-174).  By December 2005 the plaintiff was noted to have "recurrent frequent headaches" and "increasing anxiety and nervous, feelings of depression" as well as "increasing lower abdominal pain, some nausea..." (R. 175).[3]  Records from 2006 contain diagnoses of the same, namely headache and depression and anxiety (R. 179).  Medical records from Dr. Keating in 2007 and 2008 also reflect diagnoses of weakness and fatigue, as well as pelvic

---

[3]This record includes a diagnosis of osteoarthritis, but it is the only mention of such a diagnosis in the plaintiff's full medical history (R. 176).  She was repeatedly noted to have full range of motion in all her extremities. *See e.g.*, R. 178, 181, 183.

and abdominal pain (R. 181-184, 272, 308, 312, 313). She also complained of

back pain and headaches (R. 237, 273, 274, 276, 277, 279, 313). Records in 2008

refer to plaintiff's headaches as "chronic" (R. 271) and also note that she

complained of her hands, arms and legs "going numb" (R. 272, 313).

The plaintiff was referred to Bonnie Atkinson, Ph.D., for a consultative

psychological examination in June 2007 (R. 238). Dr. Atkinson found that the

plaintiff could read simple sentences and was able to complete the intake form (R.

240). However, thought and concentration were slow, reasoning was poor, and

language comprehension was poor (R. 241). Further, the plaintiff's memory was

noted to be fair, with poor delayed recall, but normal remote memory (R. 241).

Dr. Atkinson opined that the plaintiff functioned in the below average range and

could be mentally retarded (R. 241-242). She believed that the plaintiff did not

have sufficient judgment to make acceptable work decisions, but could manage

her own funds (R. 242). Dr. Atkinson concluded that "[t]his individual is not

severely mentally ill but may be mentally retarded" (R. 242) and recommended

testing to determine plaintiff's intellectual functioning (R. 243).

The plaintiff was then referred to Brian Thomas for intellectual testing (R.

247). However, the sole conclusion was that "On the Medical Symptom Validity

Test, her performance falls below acceptable levels suggesting suboptimal effort

and as such, the entire measure of intellect is not given as results are felt to not accurately reflect her true cognitive state.  She does achieve an Information Subtest age adjusted scale score of four"[4] (R. 247).

In 2008 the plaintiff sought mental health treatment for ongoing depression and anxiety (R. 302).  She was diagnosed as suffering from "Major depressive Disorder, Single Episode, Severe with Psychotic features, chronic" and "Generalized Anxiety Disorder," and assigned a Global Assessment of Functioning "GAF" score of 41 (R. 304).  A January 2009 progress note reflected the plaintiff had a depressed/blunted mood (R. 337).

In April 2008 Dr. Keating referred plaintiff to Dr. Lorn Miller, a neurologist, because of plaintiff's ongoing headaches and neck pain (R. 318).  Dr. Miller's records reflect that the plaintiff's headaches were daily, and accompanied by nausea, vomiting, and light and sound sensitivity (R. 324).  Although the plaintiff did not complain of neck pain, Dr. Miller noted tenderness in her neck and several places of point tenderness in her cervical spine (R. 324, 327).  He included diagnoses of chronic daily headaches, migraines without aura, and peripheral neuropathy (R. 327).  Upon return to Dr. Miller in October 2008, the

---

[4]An age adjusted scale score of four reflects performance two standard deviations from the mean.  See e.g., *Handbook of Psychological Assessment 3d*, p. 118 (Gerald Goldstein and Michel Hersen, eds., Elsevier Science)(2000).

plaintiff related that her headaches had decreased in frequency, but not severity, and that she averaged 4 to 5 headaches per week (R. 318).  She also related that she had neck pain radiating into both her shoulders, but it had also decreased since her last visit (R. 318).

The ALJ held that the plaintiff's headaches and dysthymic disorder were severe impairments based on the requirements in Regulations 20 CFR § 416.92(b) *et seq*. (R. 12).  The ALJ did not include borderline or below average intellectual functioning as a severe impairment, and rather than address Dr. Atkinson's notation that the plaintiff lacked sufficient judgment to make acceptable work decisions, the ALJ dismissed this as a "typographical error" because it was "totally inconsistent with her report content"[5] (R. 19).

---

[5]The court notes that Dr. Atkinson found that the plaintiff's thought and concentration were slow, reasoning was poor, language comprehension was poor, and her memory was fair, with poor delayed recall, but normal remote memory (R. 241).  Dr. Atkinson opined that the plaintiff functioned in the below average range and could be mentally retarded (R. 241-242). Given this, the court disagrees that Dr. Atkinson's finding that the plaintiff could not make acceptable work decisions was inconsistent with the remainder of her report.  As another court noted:

> The problem with the ALJ's conclusion is that, contrary to the clear law of this circuit, it substitutes the ALJ's opinion for that of the consulting psychologist. Testimony of an examining doctor must be given substantial or considerable weight unless "good cause" is shown to the contrary. *MacGregor*, 786 F.2d at 1053. While the ALJ is entitled to make credibility determinations, the ALJ may not substitute his judgment for the judgments of experts in their field of expertise.

*Matthews v. Barnhart,* 347 F.Supp.2d 1093, 1101 (M.D.Ala.2003).  Rather than attributing Dr. Atkinson's conclusions to typographical error, the ALJ could have requested Dr. Atkinson clarify this finding.

The ALJ further found the plaintiff's statements regarding her headaches not to be fully credible because "the treatment she has received has been essentially routine and conservative in nature and has generally been successful in controlling her symptoms"[6] (R. 17).  The ALJ further concluded that:

> The claimant has admitted being able to take care of her personal needs, care for her children, two of whom have special needs, go shopping and prepare meals.  The undersigned notes such activities are inconsistent with most of the claimant's complaints which are not medically supported by the record.

(R. 18).

The ALJ concluded that the plaintiff could perform work at all exertional levels and therefore was not under a disability at any time through the date of his decision (R. 20).

## STANDARD OF REVIEW

The initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment he is unable to perform his previous work.  If the claimant is successful, the burden shifts to the Commissioner to prove the claimant can perform some other type of work existing

---

[6]The court can only imagine what non-conservative treatment for headaches might include.  The court further notes that immediately after this statement, the ALJ provides a laundry list of plaintiff's complaints to doctors from April 2007 until January 2009, including her "chief complaints included headaches," "frontal headaches," "headache and nausea for the past three days," "headaches, and numbness in arms and legs," "chief complaint of headaches, which she indicated she suffered daily" (R. 18).

in the national economy.  *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987).

The court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir. 1996).  "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229) (1938).

This court must also be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).  This court may not decide facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ, even if the court finds that the weight of the evidence is against the Commissioner's decision.  *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990).  This court must affirm the decision of the ALJ if it is supported by substantial evidence. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  However, no such presumption of correctness applies to the Commissioner's conclusions of law, including the determination of the proper standards to be applied in reviewing

claims. *Brown v. Sullivan,* 921 F.2d 1233, 1235 (11th Cir. 1991).  Furthermore, the

Commissioner's "failure to ... provide the reviewing court with sufficient

reasoning for determining that the proper legal analysis had been conducted

mandates reversal." *Cornelius v. Sullivan,* 936 F.2d 1143, 1145-1146 (11th Cir.

1991).

## **LEGAL ANALYSIS**

The plaintiff argues that the ALJ failed to properly develop the record as to

plaintiff's intellectual functioning under Listing 12.05.  Plaintiff's brief, at 1.

Under the diagnostic definition, "[m]ental retardation refers to significantly

subaverage general intellectual functioning with deficits in adaptive functioning

initially manifested during the developmental period; i.e., the evidence

demonstrates or supports the onset of the impairment before age 22." 20 C.F.R.

Part 404, Subt. P, App. 1, 12.05 (2009).

An I.Q. test creates a rebuttable presumption of a fairly constant I.Q. during

a person's lifetime absent evidence of a sudden trauma that can cause retardation.

*Hodges v. Barnhart,* 276 F.3d 1265, 1268 (11th Cir.2001).[7]  Therefore, there is a

---

[7]*Hodges* cites two other appellate cases with approval for the presumptive finding that IQ's remain fairly constant throughout life. *See Muncy v. Apfel,* 247 F.3d 728, 734 (8th Cir.2001) ("Mental retardation is not normally a condition that improves as an affected person ages.... Rather, a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning."); *Luckey v. U.S. Dept. of Health & Human Servs.,* 890 F.2d 666, 668 (4th Cir.1989) (holding absence of IQ test in developmental years did

10

presumption that plaintiff has functioned generally at this level throughout her life. The plaintiff's performance as a student and her failure to complete a high school education can provide evidence that the plaintiff has always functioned at this intellectual level.

Listing 12.05C states that the required level of severity for mental retardation is met when the claimant has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional significant work-related limitation of function." 20 C.F.R. Part 404, Subt. P, App. 1, Listing 12.05 (2009).  In order for a claimant to meet the requirements under 12.05C, the impairment must satisfy the diagnostic description of 12.05 and the criteria of Listing 12.05C.  20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00A (2009).  Similarly, to meet Listing 12.05D, a plaintiff must establish a valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the listed limitations, including marked restriction of daily living, marked difficulties in maintaining social functioning, marked difficulties in concentration, persistence or pace, or repeated episodes of decompensation.   20 C.F.R. Part 404, Subt. P, App. 1, Listing 12.05 (2009).

The scant evidence on this issue before the court reflects that Dr. Atkinson

---

not preclude finding of mental retardation predating age twenty-two and courts should assume an IQ remained constant absent evidence indicating change in intellectual functioning).

found that the plaintiff's thought and concentration were slow, reasoning was poor, language comprehension was poor, and her memory was fair, with poor delayed recall, but normal remote memory (R. 241).  Dr. Atkinson opined that the plaintiff functioned in the below average range and could be mentally retarded (R. 241-242).  However, the ALJ failed to take any of this evidence into consideration. Additionally, the ALJ then took Dr. Atkinson's finding that the plaintiff did not have the ability to make acceptable work decisions to mean that the plaintiff really did have the ability to make acceptable work decisions.

Rather than develop the record in this regard, the ALJ chose to simply ignore all evidence concerning the plaintiff's intellectual acuity.  Although there is no evidence contradicting Dr. Atkinson's opinion, and indeed, significant evidence supporting it, the ALJ stated, "[l]ittle weight has been given to the opinion of Dr. Atkinson.  The undersigned notes that Dr. Atkinson's comments on page 5 of her psychological consultative evaluation appears to contain a typographical error...." (R. 19).  The court is unable to discern whether the ALJ is discrediting the opinion of Dr. Atkinson because of a supposed typographical error, or for a different reason.  Of course, to disregard a consultative examiner's opinion, the ALJ must find that it was contradicted by some other evidence of record.

Specialists on issues within their areas of expertise are entitled to more weight than non-specialists. *See* 20 C.F.R. § 404.1527(d) (1), (2) & (5); see also *Davis v. Barnhart,* 186 Fed. Appx. 965, 967 (11th Cir.2006); *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir.1987). This is especially true where, as here, the record wholly lacks any evidence which contradicts such opinions. While an ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion, *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir.1985), the sole basis for such rejection cannot be merely the ALJ's opinion that the conclusion is wrong. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158, 1160 (11th Cir.2004) (holding that the ALJ did not err in relying on consulting physician's opinion where it was consistent with medical evidence and findings of the examining physician). *See also Freeman v. Schweiker*, 681 F.2d 727 (11th Cir. 1982).[8] A hearing officer "may not arbitrarily substitute his own hunch or

---

[8]Interestingly, in *Freeman*, the Court cites to the following example in the CFR:

Particularly instructive is Example 2 at 20 C.F.R. § 201.00(h):

An illiterate 41 year old individual with mild mental retardation (IQ of 78) is restricted to unskilled sedentary work and cannot perform vocationally relevant past work, which had consisted of unskilled agricultural field work; his or her particular characteristics do not specifically meet any of the rules in Appendix 2, because this individual cannot perform the full range of work defined as sedentary. In light of the adverse factors which further narrow the range of sedentary work for which this individual is qualified, a finding of disabled is appropriate.

intuition for the diagnosis of medical professional." *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992).

Because of the inherent conflict in Dr. Atkinson's findings and Dr. Thomas', the ALJ should have sent the plaintiff to a different examiner for valid IQ testing.  It is reversible error for an ALJ not to order a consultative examination when the evaluation is necessary for him to make an informed decision, *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir.1984), although an ALJ is not required to order a consultative examination unless the record, medical and non-medical, establishes that such an examination is necessary to enable the ALJ to render a decision. *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir.1988)(citing *Ford v. Sec.of Health & Human Svcs.*, 659 F.2d 66, 69 (5th Cir.1981))(emphasis added). Under the facts here, the record established that such testing was necessary to enable the ALJ to render a decision.   *See e.g., Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir.1990) (stating that the Commissioner has a duty to develop a full and fair record).

Assuming the ALJ had attempted to either obtain valid I.Q. scores or resolve the seeming conflict between Dr. Atkinson's finding that the plaintiff was not exaggerating symptoms for secondary gain (R. 241), and Dr. Thomas' cryptic

---

*Freeman v. Schweiker,*  681 F.2d 727, 730-731 (11th Cir.1982). Although this and other examples have since been removed from the CFR, the court does find the example instructive.

finding that plaintiff's performance fell "below acceptable levels suggesting

suboptimal effort" (R. 247), the plaintiff must also possess a physical or other

mental impairment imposing an additional significant work-related limitation or

function.  20 C.F.R. Part 404, Subt. P, App. 1, 12.05 (2009). The Eleventh Circuit

Court of Appeals has held that, "[a]n impairment imposes significant limitations

when its effect on a claimant's ability to perform 'basic work activities' is more

than slight or minimal." *Edwards by Edwards v. Heckler,* 755 F.2d 1513, 1515

(11th Cir. 1985).  In addition, "'significant' requires something less than 'severe'

within the meaning" of Listing 12.05C.  *Id*.  The plaintiff's headaches easily

satisfy this prong of the Listing.

　　This court cannot conclude that the ALJ's finding that the plaintiff can

perform a wide range of unskilled work is supported by substantial evidence.

Records in evidence at the time the ALJ rendered his decision support a

conclusion that the plaintiff does have significant limitations.  The failure to apply

the correct law or to provide the reviewing court with sufficient reasoning for

determining that the proper legal analysis has been conducted mandates reversal.

*Cornelius*, 936 F.2d at 1145-46.   Given the evidence before this court, the court is

unable to determine that the proper legal analysis has been conducted.  As such,

this court must reverse the decision of the ALJ.  However, the court is unable to

conclude from the evidence before it that the plaintiff was disabled prior to March 13, 2009.  Therefore, the court will remand this case to the ALJ to obtain IQ scores through a further mental consultative evaluation, for further consideration of the evidence, proper application of the law, and any further development of the record deemed necessary for these purposes.

### Conclusion

Based on the lack of substantial evidence in support of the ALJ's findings, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Agency for further action consistent with this opinion, as set forth herein.

**DONE** and **ORDERED** this the 1st day of December, 2010.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

16